## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NATIONAL RESOURCES DEFENSE COUNCIL, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL NO. RDB 03-2444 |
| | * | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | * | |
| | * | |
| | * | |
| Defendant, | * | |
| | * | |
| SYGENTA CROP PROTECTION, INC., et al. | * | |
| | * | |
| | * | |
| Defendant-Intervenors. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>MEMORANDUM OPINION</u>

This matter is before the Court on the appeals filed by the Environmental Protection Agency and the Defendant-Intervenors from the November 24, 2004 Order of United States Magistrate Judge Susan K. Gauvey concerning a discovery dispute.  This action was initiated by the National Resources Defense Council ("NRDC" or "Appellee"), which alleges in its Complaint for Declaratory Judgment that the United Stated Environmental Protection Agency ("EPA" or "Appellant") is violating Section 7(a) of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, by failing to consult with the Fish and Wildlife Service ("FWS") and the National Marine and Fisheries Service ("NMFS") concerning the effect of atrazine on certain endangered species.  NRDC brings this suit pursuant to ESA's citizen suit provision, which allows "any person" to bring suit to enjoin anyone alleged to be in violation of the ESA.  *See* 16 U.S.C. § 1540(g).  The Defendant-Intervenors are manufacturers of

atrazine and were given leave of this Court, with no opposition by NRDC, to intervene in this action,

pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.[1]

Atrazine is a pesticide designed to interfere with the photosynthesis of weeds and has been in

use since 1958.  Because atrazine originally was registered before November 1, 1984, Section 4 of the

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 *et seq.* ("FIFRA"), requires that

it be "reregistered" to ensure that it currently meets FIFRA's requirement that it not cause

"unreasonable adverse effects on the environment."  7 U.S.C. §§ 136a-1(a), 136a(c)(5).  The EPA is

responsible for, and is in the process of, reregistering atrazine under the standards outlined by FIFRA.

NRDC contends that this reregistration process has triggered the EPA's duty to consult with FWS

and/or NMFS pursuant to Section 7(a) of the ESA.  EPA and the Defendant-Intervenors argue that, to

date, no such duty to consult has been activated by the EPA's reregistration process because there has

been no final agency action containing a finding that atrazine "may affect" or has "no affect" on certain

endangered species.  A "may affect" finding would trigger the ESA's duty to consult, while a "no affect"

finding would not require consultation.

In an Order, and accompanying Memorandum Opinion, issued after the discovery dispute was

fully briefed and a hearing was conducted, Magistrate Judge Gauvey granted NRDC's motion to

compel discovery and denied the EPA's cross motion to limit the scope of review to the administrative

record and Defendant-Intervenors' cross motion for entry of a protective order.  (Mag. Judge Gauvey

Mem. Op. at 2.)  Magistrate Judge Gauvey found that "the evidentiary record in this failure to act case

---

[1]        The Defendant-Intervenors include Syngenta Crop Protection, Inc., Kansas Corn
Growers Association, *et al.* and CropLife America.

should not be limited to the administrative record offered by EPA, a subset of the FIFRA record, but

that limited discovery should be allowed to assure that neither the plaintiff is prejudiced in presenting

proof of his claim nor the Court handcuffed in ruling on the pending claim." (Mag. Judge Gauvey Mem.

Op. at 31.) Magistrate Judge Gauvey stated that NRDC should be allowed to discover and present to

the Court all scientific and other evidence relevant to the effect of atrazine on the endangered species,

to demonstrate EPA's timely failure to consult. (Mag. Judge Gauvey Mem. Op. at 51.) The EPA and

the Defendant-Intervenors (collectively "Appellants") appeal contending that Magistrate Judge Gauvey

acted contrary to law by permitting NRDC to contravene well-established rules governing challenges to

administrative agency action and by granting its motion to compel discovery.

Oral argument is deemed unnecessary because the facts and legal arguments are adequately

presented to this Court in the parties' briefs and the very thorough Opinion of Magistrate Judge

Gauvey. For the reasons stated below, this Court reverses the Magistrate Judge's Order with respect

to permitting discovery of the EPA and affirms, in part as modified, her Order with respect to permitting

discovery of the Defendant-Intervenors.

## BACKGROUND

As mentioned above, National Resources Defense Council ("NRDC"), a non-profit

environmental membership organization, is seeking declaratory and injunctive relief against the

Environmental Protection Agency ("EPA") for allegedly failing to consult with Fish and Wildlife Service

("FWS") and/or National Marine and Fisheries Service ("NMFS") pursuant to Section 7(a) of the

Endangered Species Act ("ESA") concerning the reregistration of atrazine. NRDC's complaint seeks a

court order: (1) declaring that the EPA is violating the ESA by failing to consult with FWS and/or

NMFS concerning the impact of atrazine's registration on endangered species and designated critical

habitats; (2) directing the EPA to begin consulting with FWS and NMFS concerning the impact of

atrazine's registration; (3) enjoining the EPA from authorizing uses of atrazine that may impact

endangered species until the consultation process has been completed; and (4) awarding NRDC

attorneys' fees and costs.  NRDC's One Count Complaint does not allege a failure to act claim

pursuant to Section 706(1) of the APA.

On January 21, 2004, NRDC served interrogatories and requests for production of documents

on EPA and on the Defendant-Intervenors.  NRDC asserts that these discovery requests covered three

basic areas: 1) how much atrazine is used in certain states; 2) how much atrazine is found in the

environment in certain states; and 3) what effects atrazine has on a particular species or their habitat.

(NRDC Brief at 7.)   The EPA and the Defendant-Intervenors objected to this discovery and, as

discussed above, the disagreement was addressed by Magistrate Judge Gauvey's November 24, 2004

Order.

## STANDARD OF REVIEW

Rule 72 of the Federal Rules of Civil Procedure provides for the district court's review of a

magistrate judge's order.  Rule 72(a) provides that, for nondispositive matters, "[t]he district judge to

whom the case is assigned shall consider such objections and shall modify or set aside any portion of

the magistrate judge's order found to be clearly erroneous or contrary to law."[2]  Fed. R. Civ. P. 72(a);

*see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this

---

[2]      Rule 72 requires parties objecting to a magistrate's order to file their exceptions within 10 days of being served with a copy of the order.  Fed. R. Civ. P. 72(a).

4

subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or

contrary to law."); Local Rule 301.5.a (D. Md. 2004) (same).  Applying this standard, the United

States Court of Appeals for the Fourth Circuit has recognized that "[t]he factual findings of a magistrate

are entitled to the same deference upon review as those of the trial court under the clearly erroneous

standard." *Gairola v. Com. of Va. Dept. of General Services,* 753 F.2d 1281, 1288 (4th Cir.

1985).  When an objection is timely made, the standards set forth above apply to a district court's

review of a magistrate judge's decision concerning a discovery dispute.  *See Buchanan v.*

*Consolidated Stores Corp.*, 206 F.R.D. 123, 124 (D. Md. 2002).

## DISCUSSION

Appellants assert that Magistrate Judge Gauvey's findings were contrary to law, in part,

because she mischaracterized the nature of this case, mainly, that it is a failure to act case under the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, containing a "core question"

concerning the "potential effect of atrazine on certain endangered species."  (EPA's Brief at 3-4, citing

Mag. Judge Gauvey Mem. Op. at 6; Defendant-Intervenors' Brief at 1-2.)  The EPA believes this

Court's review of the certified Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA")

administrative record, with no extra-record evidence, is appropriate under the APA and will provide

this Court with ample information to determine whether the EPA appropriately fulfilled its responsibility

in assessing whether a "may effect" determination was necessary, and thus whether the ESA's duty to

consult requirement has been triggered.  The Defendant-Intervenors assert that discovery materials

obtained from them will not be useful in a case that concerns agency conduct, where a court is generally

limited to review of the administrative record.

NRDC contends the neither the EPA nor the Defendant-Intervenors have shown that Magistrate Judge Gauvey's decision was in error and contrary to law.  In addition, NRDC asserts that a challenge under the ESA, alleging that an agency has failed to act, should not be limited to an administrative record generated under a separate statute and, therefore, discovery is appropriate.  In addition, NRDC highlights that the Defendant-Intervenors gained participation in this case by presenting to the Court that they would add to the resolution of this matter as they are the parties with the most information about atrazine.

## I.    Relevant Statutes

To address the issues presented on this appeal of Magistrate Judge Gauvey's discovery Order, it is necessary to first briefly outline the requirements contained in Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") and Endangered Species Act ("ESA"), two separate statutory schemes that the Environmental Protection Agency ("EPA") must satisfy.

### A.    FIFRA Process and Requirements for Reregistration

The EPA shall register a pesticide product if:
(A) its composition is such as to warrant the proposed claims for it;

(B) its labeling and other material required to be submitted comply with the requirements of this subchapter;

(C) it will perform its intended function without unreasonable adverse effects on the environment; and

(D) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C. §136a(c)(5).  FIFRA defines " unreasonable adverse effects on the environment" as "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of" the pesticide.  FIFRA Section (2)(bb), Pub. L. No. 92-

516, 86 Stat. 973, 979 (1972).  This assessment is known as the FIFRA risk-benefit standard.

The EPA was directed by Congress in 1972 to "reregistrer" all existing pesticides.  *See* Pub. L. No. 92-516, 86 Stat. 973 (1972).  Reregistration is the process by which the EPA determines that existing pesticides meet the same standards for registration that apply to new applications.  *See generally* FIFRA Section 2(z), Pub. L. No. 92-516, 86 Stat. 973, 979 (1972) ("The term 'registration' includes reregistration."); (EPA's Brief at 6.)  In 1988, a five-phase process for the reregistration of pesticides was added to FIFRA, which includes specific time frames for its completion.  *See* Pub. L. No. 100-532, tit. I, §102(a), 102 Stat. 2654, 2683 (1988).  During the last stage of this process, the EPA is required to review all of the studies that have been submitted by the pesticide registrants for a pesticide active ingredient, along with other relevant information, to decide whether or not pesticides containing the active ingredient are eligible for reregistration under the risk-benefit standard contained in FIFRA Section 3(c)(5).  *See* FIFRA § 3(c)(5), Pub. L. No. 92-516, 86 Stat. 973 (1972) (codified at 7 U.S.C. § 136a(c)(5)); (EPA's Brief at 6.)  EPA must then determine whether specific products containing the active ingredient and other ingredients meet the risk-benefit standard in FIFRA Section 3(c)(5) and are reregisterable.  *See id.*

The EPA issues a Registration Eligibility Decision ("RED") for each pesticide active ingredient, which indicates the EPA's reregistration determination.  (EPA's Brief at 6.)  When a RED is issued, the EPA also "calls-in" any needed product-specific data for the actual pesticide products that contain the active ingredients addressed in the RED.  (*See id.*)  A call-in is an order requiring registrants of a particular pesticide to conduct studies on particular uses and to submit the results of those studies to EPA.  *See* FIFRA §§ 3(c)(2)(B) & 4(g), Pub. L. No. 92-516, 86 Stat. 973 (1972) (codified at 7

U.S.C. §§ 136(c)(2)(B) & 136a-1(g)); (EPA's Brief at 6.)  EPA must then determine whether to

reregister these products according to the FIFRA risk-benefit standard.  *See* FIFRA § 3(c)(5), Pub. L.

No. 92-516, 86 Stat. 973 (1972) (codified at 7 U.S.C. § 136a(c)(5)); (EPA's Brief at 7.)

In circumstances where EPA is assessing the reregistration status of an active ingredient that

may share a common mechanism of toxicity with other active ingredients, EPA often issues an Interim

Reregistration Eligibility Decision ("IRED") before it issues a Registration Eligibility Decision.  *See* 7

U.S.C. §§ 136a(c)(2)(B) & 136a-1(g); (EPA's Brief at 7.)  There was an IRED issued for atrazine

because it may share a common mechanism of toxicity with certain other compounds collectively

known as the "triazines."  *See* 69 Fed. Reg. 25082 (May 5, 2004); (EPA's Brief at 7.)  EPA, in

accordance with FIFRA, publishes in the Federal Register its progress in meeting its performance

measures and goals for pesticide registration.  *See e.g.,* 69 Fed. Reg. 25082 (May 5, 2004).  Theses

progress notices also contain a schedule for completion of activities for specific chemicals.  *See id.*

EPA is conducing reregistration under FIFRA in conjunction with tolerance reassessments, which are

required under the Federal Food, Drug and Cosmetic Act ("FFDCA")[3] § 408, 21 U.S.C. § 346(a).

*See* Pub. L. No. 104-170, 110 Stat. 1489, 1518; *see also* FIFRA § 4(g)(2)(E), (codified at 7 U.S.C.

§ 136a-1(g)(2)(E)).

FFDCA mandates that tolerance reassessments must be completed by August 2006.  EPA has

clearly indicated its intention to meet this statutory deadline for completing these reassessments, "and in

so doing, to complete reregistration eligibility decisions for pesticides with tolerances."  69 Fed. Reg.

---

[3]        Pub. L. No. 75-717, 52 Stat. 1040 (1938) (codified as amended 21 U.S.C. §§ 301 *et
seq.*).

25082, 25092 (May 5, 2004).[4]  Accordingly, there is a clearly established deadline for EPA's

determination with respect to atrazine.

> **B.** **The ESA's "May Affect" Determination and the Duty to Consult with FWS and NMFS**

Under ESA Section 7(a)(2) "[e]ach federal agency shall, in consultation with and with the

assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . .

is not likely to jeopardize the continued existence of any endangered species or threatened species or

result in the destruction or adverse modification of [design critical habitat]."  16 U.S.C. § 1536(a)(2);

*see also* 50 C.F.R. Parts 402, 424.  An agency proposing an action must first determine whether the

action "may affect" species listed as threatened or endangered under the ESA.  *See* 50 C.F.R. Parts

402.14.

> Each Federal agency shall review its actions at the earliest possible time to determine whether any action may affect listed species or critical habitat. If such a determination is made, formal consultation is required, except as noted in paragraph (b) of this section. The Director may request a Federal agency to enter into consultation if he identifies any action of that agency that may affect listed species or critical habitat and for which there has been no consultation. When such a request is made, the Director shall forward to the Federal agency a written explanation of the basis for the request.

50 C.F.R. Parts 402.14(a).  If, for example, an agency determines that the proposed action will have

no effect on a listed species or any designated critical habitant, then consultation is not required under

the ESA.  *See Newton County Wildlife Ass'n v. Rogers*, 141 F.3d 803, 810 (8th Cir. 1998);

*Southwest Center for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1447

---

[4]      The EPA expects to complete remaining reregistration eligibility decisions for pesticides with no food uses or tolerances during 2007 and 2008.  69 Fed. Reg. 25082, 25092 (May 5, 2004).

(9th Cir. 1996).  If the agency determines that an agency action "may affect" a listed species in a critical habitat, the agency must engage in either informal or formal consultation as appropriate with either the FWS or NMFS, depending on which species are potentially affected.  *See* 50 C.F.R. Parts 402.14(a); 402.13; *see also* 67 Fed. Reg. 71549 (Dec. 2, 2002) (EPA notice of proposed field implementation approach and request for comment, which discusses EPA's duty to fulfill both FIFRA and the ESA).

## II      Analysis of November 24, 2004 Discovery Order issued by Magistrate Judge Gauvey

As Magistrate Judge Gauvey noted, in her very thorough opinion, the issues presented by this discovery matter "present complex and emerging issues of administrative and environmental law, with little direct precedent available to the Court."  (Mag. Judge Gauvey Mem. Op. at 7.)  The Magistrate Judge recognized that the Endangered Species Act's citizen suit provision, under which Plaintiff's initiated this suit, contains no standard of review and, therefore, the Administrative Procedure Act standards of review apply.  (Mag. Judge Gauvey Mem. Op. at 32.); *see also American Canoe Ass'n, Inc. v. E.P.A.*, 46 F. Supp. 2d 473, 476 (E.D. Va. 1999) ("In short, where, as here, the statutes in issue provide for judicial review via citizen suit provisions, yet do not set forth a standard for that review, judicial review is limited to APA review on the administrative record.")  Magistrate Judge Gauvey concluded that this case is a "failure to act" case under the APA and that there is an absence of a record to review because no agency action has been taken by the EPA under the ESA.  (Mag. Judge Gauvey Mem. Op. at 32.)

Generally, an agency action must be *final* for judicial review to occur.  *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) ("First, the action must mark the consummation of the agency's decisionmaking process--it must not be of a merely tentative or interlocutory nature. And second, the

action must be one by which rights or obligations have been determined, or from which legal

consequences will flow."); 5 U.S.C. § 704.  The APA's definition of "agency action", however,

explicitly includes an agency's "failure to act."  *See* 5 U.S.C. § 551(13) ("'agency action' includes the

whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or

failure to act . . .").  Section 706 of the APA outlines the "scope of review" that the judiciary is to apply

when reviewing agency action or inaction.

Section 706 states:

To the extent necessary to decision and when presented, the reviewing court shall decide all
relevant questions of law, interpret constitutional and statutory provisions, and determine the
meaning or applicability of the terms of an agency action. The reviewing court shall--

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be--

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title
or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the
reviewing court.

In making the foregoing determinations, *the court shall review the whole record* or those
parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (emphasis added).  Section 706(1) provides for review of agency inaction on a limited

basis, where an "agency action [is] unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

Section 706(1), however, does not allow courts to compel agency action wherever agency inaction

11

exists.  Even when an agency is required by statute to act, Section 706(1) authorizes courts to compel

agency action only when "unlawfully withheld" or "unreasonably delayed."  The parameters of Section

706(1) have been the subject of much confusion, some of which was recently clarified by the Supreme

Court.

In *Norton v. Southern Utah Wilderness Alliance* the Supreme Court noted that " . . . a claim

under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete*

agency action that it is *required to take*."  *Norton v. Southern Utah Wilderness Alliance*,  -- U.S. --

, 124 S. Ct. 2373, 2379 (2004) (emphasis in original).

> The principal purpose of the APA limitations we have discussed--and of the traditional
> limitations upon mandamus from which they were derived--is to protect agencies from undue
> judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract
> policy disagreements which courts lack both expertise and information to resolve. If courts
> were empowered to enter general orders compelling compliance with broad statutory
> mandates, they would necessarily be empowered, as well, to determine whether compliance
> was achieved--which would mean that it would ultimately become the task of the supervising
> court, rather than the agency, to work out compliance with the broad statutory mandate,
> injecting the judge into day-to-day agency management.

*Id.* at 2381.  The very issue in the instant action is whether EPA is "required to take" certain action

under the ESA as a result of its actions thus far to fulfill its duties under FIFRA.  The Supreme Court in

*Norton* stated that "when an agency is compelled by law to act within a certain time period, but the

manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no

power to specify what the action must be."  *Id.* at 2380 (2004).  For example, even if this case was

brought as a failure to act case, pursuant to § 706(1), this Court could order the EPA to make the

necessary ESA effects determination, but it would not be permitted to order what the effects

determination should be.  *See id.* at 2380.  Furthermore, it is not within the jurisdiction of this Court to

mandate that EPA make this determination earlier than statutory deadlines established by Congress.

The D.C. Circuit in *Telecommunications Research Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) provided guidance for a court faced with determining whether it can review an action pursuant to § 706(1), noting that the threshold a litigant must pass to obtain judicial review of ongoing agency proceedings is a high one.[5]  *See id.* at 79-80.  To determine whether an agency's action was unreasonably delayed under § 706(1), the court should apply a rule of reason and examine, among other factors, "the effect of expediting delayed action on agency activities of a higher or competing priority." *Id.* at 80.  The D.C. Circuit noted that "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason." *Id.*  As EPA highlights, it is undisputed that it has not yet engaged in ESA Section 7 consultation, nor has it "determine[d] in the first instance whether atrazine may affect endangered species." (EPA's Brief at 1, 3.)  As Magistrate Judge Gauvey aptly noted, the heart of the dispute in this case is whether the requisite "agency action" has occurred in this case to trigger any EPA duty to consult.  (Mag. Judge Gauvey Mem. Op. at 19).  As the case proceeds the central issue presented by the parties' cross-motions for summary judgment will likely be whether ESA consultation has been triggered in some way by the EPA's action during the reregistration process of atrazine pursuant to FIFRA.  NRDC contends that ESA consultation has been triggered by the EPA's FIFRA-related work, while Appellants contend that nothing has *de facto* triggered its ESA

---

[5]        The D.C. Circuit stated that "[p]ostponing review until relevant agency proceedings have been concluded permits an administrative agency to develop a factual record, to apply its expertise to that record, and to avoid piecemeal appeals." *Telecommunications Research Action Center*, 750 F.2d at 79 (internal citations and quotations omitted).

responsibilities and the EPA has simply not yet reached or determined a "may affect" or "no affect" atrazine decision pursuant to the ESA.  NRDC presents its ESA claim to this Court based on the EPA's actions to fulfill it obligations under FIFRA, which it argues have triggered ESA consultation. *See* ESA 7(a)(2) ("[e]ach federal agency shall, in consultation with and with the assistance of the Secretary, insure that *any action* authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [design critical habitat].") (emphasis added).  The underpinnings of this suit rest in EPA's FIFRA-related reregistration activities and without this foundation there would be absolutely no ESA claim to pursue.

This Court finds that based on the Complaint filed in this action it was contrary to law to characterize this action as a failure to act case, pursuant to § 706(1) of the APA, as Magistrate Judge Gauvey concluded.  Notably, NRDC does not allege in its Complaint that this is a failure to act case pursuant to § 706(1) of the APA.  NRDC has alleged that there was a failure *to consult* under the Endangered Species Act.  However, a failure *to act* claim pursuant to the APA has a separate specified meaning, as discussed above.  An allegation that EPA should have already consulted with FWS and/or NMFS, pursuant to the ESA, based on its FIFRA findings thus far is not automatically a failure to act claim pursuant to § 706(1) of the APA and the two terms "failure to act" and "failure to consult" cannot be used interchangeably.  In light of this Court's finding that this case cannot, at this time, be construed as a failure to act case, the Court examines Magistrate Judge Gauvey's determination to permit extra-record evidence by allowing discovery of the EPA and the Defendant-Intervenors.

14

A.     **EPA**

As outlined by § 706 of the APA, in reviewing either an agency's failure to act or an agency's actions, "the court shall review the whole record or those parts of it cited by a party . . . ." 5 U.S.C. § 706.  Generally, a Court's review of an agency action is confined to the administrative record.  *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) (" . . . the focal point for judicial review should be the administrative record already in existence, *not some new record made initially in the reviewing court*.") (emphasis added); *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335 (4th Cir. 1995) (citing *Fayetteville Area Chamber of Commerce v. Volpe,* 515 F.2d 1021, 1024 (4th Cir. 1975) ("Judicial review of administrative action is generally confined to the administrative record."); *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 -1247 (11th Cir. 1996) ("Thus while certain circumstances may justify going beyond the administrative record, a court conducting a judicial review is not 'generally empowered' to do so.").

In reviewing the administrative record, courts are to accord a high level of deference to an agency's decision.  *See Trinity American Corp. v. EPA*, 150 F.3d 389, 395 (4th Cir. 1998) (citing *Natural Resources Defense Council, Inc. v. EPA,* 16 F.3d 1395, 1401 (4th Cir.1993)).  A court must uphold an agency action unless the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See Trinity American Corp. v. EPA*, 150 F.3d at 395 (quoting 5 U.S.C.A. § 706(2)(A)).  The Supreme Court has stated that in determining whether an agency action is arbitrary and capricious, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a

15

narrow one.  The court is not empowered to substitute its judgment for that of the agency."  *See*

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

In light of the type of review a court is required to conduct when examining a challenged agency

action or inaction, the "core question" in this case is not the "potential effect of atrazine on certain

endangered species."  (Mag. Judge Gauvey Mem. Op.  at 6.)  This Court's analysis will likely center

on whether EPA has triggered ESA's duty to consult during the FIFRA required reregistration process

of atrazine, as a matter of law, and whether the EPA has acted arbitrarily and capriciously in making

certain affects determination for atrazine.  The Court is not permitted to substitute its judgment for the

EPA and make an independent determination about the "potential effect of atrazine on certain

endangered species."  (*See* Mag. Judge Gauvey Mem. Op. at 6.)   The issue is whether it is

appropriate for this Court to conduct its analysis based solely on the atrazine-related FIFRA

administrative record presented by the EPA or by also considering certain types of extra-record

evidence requested by NRDC.

The limitation to the administrative record has been generally recognized.  Indeed, the United

States Court of Appeals for the Ninth Circuit has specified that a court may go beyond the

administrative record only where: 1) an agency's failure to explain its action effectively frustrates judicial

review; 2) it appears that the agency relied on materials not included in the record; 3) technical terms or

complex subjects need to be explained; or 4) there is a strong showing of agency bad faith or improper

behavior.  *See Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436-37 (9th Cir. 1988); *see also*

*Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d

1242, 1246 n.1 (11th Cir. 1996).  "The reviewing court is not generally empowered to conduct a *de*

16

*novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry .

. . . The factfinding capacity of the district court is thus typically unnecessary . . . . [The court is] to

decide, on the basis of the record the agency provides, whether the action passes muster under the

appropriate APA standard of review." *Preserve Endangered Areas of Cobb's History*, 87 F.3d at

1246 (finding that "the District Court did not err in limiting its review to the administrative record and so

did not abuse its discretion by granting a protective order prohibiting any discovery.").

The Eastern District of Virginia addressed similar issues to those before this Court in *American*

*Canoe Ass'n, Inc. v. EPA*, 46 F. Supp. 2d 473 (E. D. Va. 1999). In that case, the plaintiff argued

that a claim brought pursuant to the Endangered Species Act's citizen suit provision should not be

limited to the administrative record because the Administrative Procedure Act and its requirements have

no relevance to these claims. The Virginia district court rejected this effort at additional discovery. The

court noted that "APA supplies the appropriate standard of review in citizen suit cases, it would be

irrational to expand discovery beyond the administrative record, as an 'arbitrary and capricious'

standard assumes that the court will, in the usual circumstance, base its review upon the material

actually before the agency." *American Canoe*, 46 F. Supp. 2d at 477 (citing *Public Power Council*

*v. Johnson*, 674 F.2d 791, 793 (9th Cir. 1982)). The court further noted that "limiting judicial review

to the administrative record in typical citizen suits is consistent with a sensible reluctance to involve the

judiciary too deeply in administrative decision making, which reluctance permits agencies to function

efficiently within their areas of expertise." *Id*. at 476. The United States District Court for the District

of Colorado reached an identical conclusion in *Sierra Club v. U.S. Dept. of Energy*, 26 F. Supp. 2d

1268 (D. Colo. 1998). In that case, the plaintiff also sought extended discovery contending that the

court's determination of this action is not limited to the administrative record because plaintiff seeks to

"compel agency action unlawfully withheld" under § 706(1).  *See id.* at 1271.  The court in *Sierra Club*

held that "[t]he judicial review provisions of the APA do not distinguish between a claim that an agency

unlawfully failed to act and a claim based on action taken [and]  [i]n both cases, the court's review of

the defendant agencies' actions is generally confined to the administrative record."  *Id.* at 1271.

NRDC does not allege, nor has it shown at this stage in this action, that 1) the EPA's failure to

explain its action effectively frustrates judicial review; 2) the EPA relied on materials not included in the

record; 3) technical terms or complex subjects need to be explained; or 4) there is a strong showing of

bad faith or improper behavior on the part of the EPA.  *See generally Animal Defense Council*, 840

F.2d at 1436-37.  Instead, NRDC now attempts to characterize this action as a failure to act case that

has no administrative record for this Court to review, even though its Complaint does not allege an

APA failure to act claim arising under 5 U.S.C. § 706(1).[6]   In support of the concept that failure to act

cases require discovery NRDC cites *Friends of the Clearwater v. Dombeck*, 222 F.3d 552 (9th Cir.

2000), which found that in an action arising under 5 U.S.C. § 706(1), to "compel agency action

unlawfully withheld or unreasonably delayed" there is not a challenge to a final agency decision that has

a clear administrative record.  *Id.* at 560.  NRDC seeks to base discovery on the simple fact, which is

undisputed, that EPA has not yet made an affects determination about atrazine, pursuant to ESA.  (*See*

EPA's Brief at 3.)  NRDC has not alleged that EPA has missed some type of statutorily imposed

---

[6]       To try to remedy its failure to assert a failure to act claim pursuant to 5 U.S.C. § 706(1),
NRDC asserts that an ESA suit, brought pursuant to the citizen suit provision of the ESA, should basically
exempt NRDC from having to allege a failure to act claim, while still benefitting from limited exemptions
allowing discovery in certain failure to act cases.

deadline for making an ESA determination, nor has it shown that EPA refuses to make an "may affect" or "no affect" ESA determination.[7]  A plaintiff cannot force discovery when it chooses to file a complaint, which fails to specifically allege a claim arising under 5 U.S.C. § 706(1) or facts supporting such a claim, prior to final agency action and then seeks discovery because it claims there is no record. Here, there is a FIFRA record, which includes a section on the ecological affects of atrazine.[8]  Without agency action to reregister atrazine under FIFRA, there could not even be an ESA claim in this case. As EPA reaches its ESA-related determination concerning atrazine, there will similarly be a record under the ESA.  In this case, the fact there is "no final agency action to demarcate the limits of the record" is a problem of NRDC's own making.  *See generally Friends of the Clearwater v. Dombeck*, 222 F.3d 552 (9th Cir. 2000); *Independence Mining Co., Inc. v. Babbitt,* 105 F.3d 502, 511 (9th Cir.1997) (discussing the need for extra-record evidence in failure to act cases).

NRDC asserts that it needs discovery covering three basic areas: 1) how much atrazine is used in certain states; 2) how much atrazine is found in the environment in certain states; and 3) what effects atrazine has on a particular species or their habitat.  (NRDC Brief at 7.)  These areas of inquiry appear to be directed toward presenting this Court with information so that it may provide its opinion to the EPA during its decision making process.  This is not appropriate as the function of this Court is only to examine whether certain of the EPA's actions were arbitrary and capricious based on the materials

---

[7]     Although NRDC argues that it is suing EPA for "failing to comply with a mandatory statutory duty" and therefore "discovery is necessary" (NRDC's Brief at 21), the very issue in this case is whether the "mandatory statutory duty" to consult is even applicable yet or at all.

[8]     EPA submits the section of the FIFRA record containing information on the ecological affects of atrazine as the certified administrative record for purposes of this action.

considered by the EPA.  Furthermore, if this Court were to find that it could not resolve this dispute based on the certified EPA record, the likely result is for the Court to remand to the EPA and not to permit discovery in an attempt to remedy any deficiencies.  "If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, *the proper course*, except in rare circumstances, *is to remand to the agency for additional investigation or explanation*."  *Preserve Endangered Areas of Cobb's History*, 87 F.3d at 1246 (emphasis added); *see also Camp,* 411 U.S. at 143 (noting that if the agency decision is not sustainable on the basis of the administrative record the proper remedy is to remand the matter to the agency for further consideration).

Magistrate Judge Gauvey's discovery order granting NRDC's motion to compel discovery and denying EPA's cross motion for entry of a protective order projects this Court into an administrative process, contrary to law and the intent of Congress.  In prematurely characterizing this case as a failure to act case, the Magistrate Judge incorrectly characterized the "core question" before this Court at this time.  Under clearly established principles of administrative law, this Court is not to substitute its own judgment on the "potential effect of atrazine on certain endangered species", based on its own generation of extra-record evidence as a result of broad discovery imposed upon EPA.  Accordingly, Magistrate Judge Gauvey's Order as to EPA is reversed, the motion to compel of NRDC as to EPA is denied and EPA's cross motion to limit discovery to its administrative record is granted.

B.      **Defendant-Intervenors**

For many of the same reasons asserted by the EPA, and addressed above, the Defendant-Intervenors contend that NRDC should be prohibited from obtaining discovery from them.  Although the arguments asserted by the Defendant-Intervenors are in line with those presented by the EPA, the Defendant-Intervenors are obviously not an administrative agency sued pursuant to statutory obligations under FIFRA and ESA.  The APA does not provide a source of refuge to the private Defendant-Intervenors in this case.

The Defendant-Intervenors requested to become part of this action.  As stated in this Court's Memorandum Opinion and Order granting the motions to intervene filed by Syngenta Crop Protection, Inc., Kansas Corn Growers Association, *et. al*, and CropLife America, each of the intervenors noted in their briefs that they will bring forth relevant independent information, ranging from unique safety data to practical agricultural experience using atrazine, that otherwise would not be presented by the other parties, the absence of which would adversely impact the proceedings.  (*See* Syngenta Crop Protection, Inc. Mot. to Intervene at 15; CropLife America Mot. to Intervene at 13; Kansas Corn Growers Association, *et. al* Mot. to Intervene at 20.)  This factor was important to the Court in permitting intervention.  The Defendant-Intervenors add nothing to this action in the absence of some production through discovery.

For instance, in this action there has been confusion and debate over the completeness of the certified administrative record thus far created by the EPA.  (NRDC's Brief at 27, 31-32).  EPA has discovered an additional public docket that was inadvertently omitted from the record.  NRDC notes that documents produced in a separate Freedom of Information Act litigation against the EPA, which

were presented to Magistrate Judge Gauvey for review, indicate that there were frequent meetings between the Defendant-Intervenors and the EPA to discuss atrazine's endangered species effects and ecological risks.  (NRDC's Brief at 31.)  This is an appropriate subject of discovery directed by NRDC to the Defendant-Intervenors.

Therefore, largely following Magistrate Judge Gauvey's resolution (Mag. Judge Gauvey Mem. Op. at 49-51), NRDC can seek discovery of the Defendant-Intervenors related to the ecological effects assessment conducted during the EPA's FIFRA reregistration process of atrazine for the past six years, only in the relevant geographic areas.  Defendant-Intervenors would not be required to produce any documents already in the EPA-certified administrative record for this matter.  Discovery shall be limited to information that was shared between EPA and the Defendant-Intervenors, which possibly should be part of EPA's administrative record.   Accordingly, NRDC should alter its discovery request.  Magistrate Judge Gauvey's Order granting the motion to compel as to the Defendant-Intervenors is affirmed, as narrowed and modified.

<u>CONCLUSION</u>

For the reasons stated above, pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Local Rule 301.5.a, this Court reverses Magistrate Judge Gauvey's Order with respect to permitting discovery of the EPA and affirms, in part as modified, her Order with respect to permitting discovery of the Defendant-Intervenors.  A separate Order consistent with this Opinion will follow.


Dated: May 24, 2005                              /s/_____
                                                 Richard D. Bennett
                                                 United States District Judge